IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE BELLEAU,                                            CV. 05-872-PK
                      Plaintiff,

v.                                                         FINDINGS AND
                                                           RECOMMENDATION

JOANNE B. BARNHART,
Commissioner of Social Security,
                      Defendant.

PAPAK, Magistrate Judge:

INTRODUCTION

        Plaintiff George Belleau ("Belleau") brings this action for judicial review of a final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying

his application for Social Security disability insurance benefits ("DIB") under Title II of the

Social Security Act.[1]  This court has jurisdiction under 42 U.S.C. § 405(g).  For the reasons set

forth below, this court recommends that the Commissioner's final decision be reversed and

---

        [1]While Belleau did file another application for benefits, he acknowledges that only the
denial of his March 28, 2003, application for DIB benefits is at issue here.

remanded for the calculation and award of benefits.

BACKGROUND

Belleau was 50 years old on the date of the hearing.  He completed eleventh grade.  He worked in the past as a truck driver.

Belleau alleges disability due to malabsorption, rapid mobility of intestines with cramping,[2] chronic fatigue, muscle and joint pain, and chest pain.  AR 60.[3]  In his Reconsideration Disability Report, Belleau alleges that he suffers from the following medical conditions:  irritable bowel disease ("IBS"), rapid transit, malabsorption, acid reflux, degenerative disc disease, sciatica, thoracic outlet syndrome, Raynaud's disease, PVCs (premature ventricular complexes or cardiac arrhythmias), headaches, fibromyalgia and insomnia.  AR 69.  He claims these conditions cause the following symptoms:  nausea,  chronic diarrhea, abdominal cramping and pain associated with the digestive problems, severe headaches, severe joint and muscle pains with restricted range of motion in all joints, extreme fatigue, bouts of insomnia for 2-3 days, and severe chest and arm pains.  AR 69.

Belleau alleges that he cannot work because of his combined physical impairments, and that he ultimately stopped working in 1993 due to intense nausea and diarrhea caused by IBS with rapid transit.  AR 275.  He also alleges that he stopped working because he was in too much pain and had to be close to a bathroom.  AR 61.

Belleau filed an application for DIB benefits on March 28, 2003, alleging disability

---

[2]This condition is also referred to throughout the record as rapid bowel transit.

[3]Citations are to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

Page 2 - FINDINGS AND RECOMMENDATION

beginning December 31, 1997.  He was last insured on December 31, 1997.  Thus, to establish

entitlement to benefits, he must demonstrate that the onset of disability occurred on or before

that date.  Belleau's application was denied initially and upon reconsideration.  On October 28,

2004, a hearing was held before an Administrative Law Judge ("ALJ").  In a decision dated

December 18, 2004, the ALJ found Belleau not disabled and therefore not entitled to benefits.

On April 13, 2005, the Appeals Council denied Belleau's request for review, making the ALJ's

decision the final decision of the Commissioner.

       Belleau filed his opening brief seeking judicial review of the Commissioner's decision on

May 1, 2006.  The Commissioner responded by filing a motion to remand, conceding the

judgment to Belleau, but requesting a remand to the agency for further administrative

proceedings.  Belleau argues that because the record is fully developed, further administrative

proceedings are unnecessary and this court should remand for the immediate payment of

benefits.                                          STANDARDS

       A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her

disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

(1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan,

924 F.2d 841, 849 (9th Cir. 1991).

       The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53

F.3d at 1039 (citation omitted).  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, if "the evidence is susceptible to

more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

MEDICAL RECORDS

The medical records accurately set forth Belleau's medical history as it relates to his

claim.  The court has carefully reviewed the records, and the parties are familiar with them.

Accordingly, only a brief summary appears below.

Belleau's history of arm and neck pain and associated numbness dates back to 1991 in the

medical record though he claims these problems started earlier, in 1988 or 1989.  AR 241.  His

medical history of abdominal pain and gastric problems dates back to 1993.  AR 238.  He had a

laproscopic cholectystectomy to remove his gallbladder and two gallstones in October 1997.  AR

87.  Prior to December 31, 1997, he was diagnosed at various times with rapid bowel transit with

malabsorption, degenerative disc disease, thoracic outlet syndrome, depression, irritable bowel

syndrome, PVCs, fibromyalgia, gastroesophageal reflux, and restless leg syndrome.  Belleau

reports that he lost 50 pounds in ten months due to severe diarrhea in late 1993 and early 1994.

He reports continued nausea, diarrhea and abdominal pain in spite of medication.  Belleau

testified that thoracic outlet syndrome[4] causes hand and arm numbness when he reaches forward with his arms.  Belleau has been placed on a number of prescription drugs including Trazadone, Remeron, Nortriptyline, Flexeril, Prilosec, Oxycodone, Fiorinol with codeine, and a Fentanyl patch.  Belleau reports that medication gives him inconsistent relief from his ongoing physical conditions.

DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One.  The ALJ determines whether claimant is engaged in substantial gainful activity.  If so, claimant is not disabled.  If claimant is not engaged in substantial gainful activity, the ALJ proceeds to evaluate claimant's case under step two.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Step Two.  The ALJ determines whether claimant has one or more severe impairments significantly limiting him from performing basic work activities.  If not, the claimant is not disabled.  If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).

Step Three.  The ALJ next determines whether claimant's impairment "meets or equals"

---

[4]Thoracic outlet syndrome consists of a group of distinct disorders that affect the nerves that pass into the arms from the neck, and nerves and blood vessels between the base of the neck and the armpit.  Symptoms include weakness and wasting of hand muscles, and numbness in the hands.

one of the impairments listed in the Social Security Administration ("SSA") regulations found at 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the ALJ's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Step Four. The ALJ determines whether claimant has sufficient residual functional capacity ("RFC") despite the impairment or various impairments to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the ALJ's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Step Five. The ALJ determines whether claimant is able to do any other work. If not, claimant is disabled. If the ALJ finds claimant is able to do other work, the ALJ must show a significant number of jobs exist in the national economy that claimant can do. The ALJ may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2. If the ALJ demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the ALJ does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At step five, the burden shifts to the ALJ to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

THE ALJ'S FINDINGS

At step one, the ALJ found that Belleau  had not engaged in substantial gainful activity at

Page 6 - FINDINGS AND RECOMMENDATION

any time relevant to this decision.  AR 12.  This finding is not in dispute.  At step two, the ALJ found that Belleau had the following severe impairments:  irritable bowel syndrome and thoracic outlet syndrome.  AR 13.  This finding is in dispute.  At step three, the ALJ found that Belleau's impairments were not severe enough to meet or medically equal any of the listed impairments of 20 C.F.R. Subpart P, Appendix 1.  AR 13.  This finding is not in dispute except to the extent that the ALJ failed to consider Belleau's depressive disorder and fibromyalgia in combination with other impairments.

Next, the ALJ found that Belleau retained the residual functional capacity to perform at all exertion levels that did not require constant reaching.  AR 14-15.  This finding is in dispute.  At step four, the ALJ found that Belleau could perform his past relevant work as a truck driver.  AR 15.  This finding is in dispute.  The ALJ did not make a finding at step five.

DISCUSSION

Belleau contends that the ALJ erred by:  (1)  improperly excluding limitations from Belleau's severe impairment of IBS from the RFC finding; (2) improperly rejecting Belleau's credibility; (3) improperly rejecting the medical opinions of Dr. Koekkoek; (4) failing to consider Belleau's fibromyalgia; (5) failing to develop the evidence of Belleau's depressive disorder.  Because the first three issues are dispositive, the final two issues need not be addressed.

Residual Functional Capacity ("RFC") Determination

After finding that Belleau had the severe impairments of IBS and thoracic outlet syndrome, the ALJ formulated Belleau's RFC:  "[T]he claimant retains the residual functional capacity for work not requiring constant reaching."  AR 15.  Because the ALJ failed to assess

any limitations based on Belleau's severe impairment of IBS, the ALJ committed error. The record shows that IBS caused Belleau to have cramping, nausea and diarrhea, and required that he lie down after eating. Also, Belleau required access to restroom facilities on a regular basis. The ALJ did not account for any of these limitations in formulating Belleau's RFC, and failed to include them in the hypothetical questions he posed to the vocational expert ("VE"). The ALJ is required to explain how Belleau's gastric difficulties affect his ability to work, or whether these difficulties would constitute a nonexertional limitation. See Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990) (requirement applied based on incontinence); see also Haynes v. Heckler, 716 F.2d 483, 485 (8th Cir. 1983) (colon discomfort and recurrent episodes of diarrhea are nonexertional limitations). Also, the ALJ may not disregard Belleau's alleged limitations without setting forth specific and legitimate reasons, supported by the record, for excluding those limitations from hypothetical questions posed to the VE. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988). Because the ALJ failed to consider the limitations of Belleau's IBS in formulating his RFC and failed to provide accurate limitations to the VE, the ALJ's finding at step four is flawed and the VE's testimony can not constitute substantial evidence to support the ALJ's determination that Belleau is not disabled. See Russell v. Sullivan, 930 F.2d 1443, 1455 (9th Cir. 1991) (explaining that hypothetical questions must set out all claimant's limitations and assumptions in the hypothetical must be supported by the record for VE's opinion to have evidentiary value).

Belleau's Credibility

Belleau contends that the ALJ wrongly rejected his testimony as to his symptoms in finding Belleau's alleged limitations not wholly credible. The Commissioner concedes that some of the ALJ's reasons for questioning Belleau's credibility were supported by the record and some

Page 8 - FINDINGS AND RECOMMENDATION

were not.  Belleau argues that because the ALJ improperly rejected his testimony,

Ninth Circuit precedent requires that this court credit his testimony as a matter of law.

      If there is medical evidence of an underlying impairment, the ALJ may not discredit a

claimant's testimony as to the severity of symptoms merely because they are unsupported by

objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en

banc).  "Unless there is affirmative evidence showing that the claimant is malingering, the

Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'"

Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).  "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

undermines the claimant's complaints."  Id.  In weighing a claimant's credibility, the ALJ may

consider his reputation for truthfulness, inconsistencies either in his testimony or between his

testimony and his conduct, his daily activities, his work record, and testimony from physicians

and third parties concerning the nature, severity, and effect of the symptoms of which he

complains.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

      The ALJ questioned Belleau's credibility in the following four categories:  1) limitations

related to IBS; 2) limitations related to thoracic outlet syndrome; 3) Belleau's supposedly "active

lifestyle"; and 4) use of medication during the time period in question.

      After finding that IBS was a severe impairment, the ALJ wrote:  "The claimant's bowel

movements are primarily controlled with an eating schedule during the time period at issue.

There is no evidence of weight loss in 1997.  Treatment records reveal a small weight gain

during the time period (Exhibit 2F)."  AR 14.  The record does not support the ALJ's assertion

that Belleau's bowel movements were controlled with an eating schedule.  Belleau testified that

he tried to eat small amounts in the morning and afternoon, and ate his only true meal at the end

Page 9 - FINDINGS AND RECOMMENDATION

of the day to minimize the number of trips he had to make to the restroom and to reduce nausea. AR 280-81. He also waited until the end of the day to eat his meal so that he would be able to lie down after eating. AR 280-81. Belleau testified that this routine "makes a difference" but not that it "controlled" the situation. AR 281. Even if this routine did control his bowel movements, the ALJ fails to address Belleau's testimony as to nausea and his need to lie down after eating. The fact that Belleau had not lost weight in 1997 or had gained a small amount of weight may show that his condition was not worsening, but is not substantial evidence of improvement in Belleau's condition sufficient to question his credibility. See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (evidence on which ALJ relies to question claimant's credibility must be substantial).

After finding that thoracic outlet syndrome was a severe impairment, the ALJ wrote: "The claimant was able to work as a truck driver for many years after developing thoracic outlet syndrome in 1988, work which required frequent reaching." AR 14. This statement is not supported by the record. Belleau last worked in 1993, and was diagnosed with thoracic outlet syndrome in 1994, after he stopped working. AR 13. While Belleau may have had some thoracic outlet syndrome symptoms as early as 1988, he does not allege that those symptoms were disabling, but rather that he stopped working due to diarrhea, nausea and other symptoms caused by IBS with rapid bowel transit. Also, Belleau testified at his hearing that his symptoms of thoracic outlet syndrome worsened after 1993. AR 284. Because the ALJ's statement is not supported by evidence in the record that undermines Belleau's testimony as to the limitations caused by thoracic outlet syndrome, the ALJ erred in this part of his assessment of Belleau's credibility.

As to his lifestyle and physical activities, the ALJ wrote:

The credibility of the claimant is further undermined by his active lifestyle.  In January 1998 he suffered a thigh contusion while using a pneumatic log splitter (Exhibit 1F-12).  In February 1997 he reported he had been doing a lot of tractor work over the past 3 days, especially steering the wheel, with a lot of vibration on the left hand (Exhibit 2F-22).  In April 1999 he reported that he had been doing a lot of work on his father-in-law's farm (Exhibit 2F-46).

AR 14.

While Belleau's activities bear on his credibility if the activities in question were inconsistent with his alleged limitations, Morgan v. Commissioner of Social Security, 169 F.3d 595, 599-600 (9th Cir. 1999), the ALJ's statements as to Belleau's physical activities are not supported by the record.  Also, some limited level of activity is not fatal to Belleau's assertion of disability.  See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant does not need to be "utterly incapacitated" to be considered disabled); see also Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998) (sporadic ability to work not inconsistent with disability).  During his testimony, Belleau explained that he was not physically operating the log splitter, but merely working the hydraulic controls or handles and trying to teach his nephew how to work the machine.  AR 288-89.  He also testified that this activity lasted approximately ten minutes.  Id. The ALJ erred in questioning Belleau's credibility based on this statement, as the Commissioner acknowledges in her Memorandum in Support of Remand.

As for the tractor work and other work on his father-in-law's farm cited by the ALJ, Belleau testified that what he had referred to as a "yard tractor" was in fact a riding lawnmower, so Belleau did not do any work with a tractor.  AR 286.  Also, Belleau testified that he was only able to mow grass in half-hour or forty-five minute increments, two days per week at the most, and that it would take him a month to complete all the mowing, a task he estimated would take four hours total if done from start to finish.  AR 287-88.  He also explained that if he was having

Page 11 - FINDINGS AND RECOMMENDATION

digestive problems or problems with his arms, he would not be able to do any mowing.  AR 288.


        The ALJ's reliance on vague statements from the record about which Belleau was

questioned at his hearing and for which he provided satisfactory explanations is not sufficient to

question his credibility.  Further, Belleau's ability to perform a limited amount of work on a

sporadic basis in his home environment is not evidence that he can sustain work in a business

setting on a regular, full-time schedule.  See Fair v. Bown, 885 F.2d 597, 603 (9th Cir. 1989)

(explaining that many home activities are not easily transferable to the workplace where it might

be impossible to rest periodically or take medication).  None of the activities Belleau performed

required exertion in excess of the limitations he alleges accompany the severe impairments of

IBS and thoracic outlet syndrome.

        Finally, with regard to Belleau's medication, the ALJ wrote:  "The claimant was taking

essentially no pain medications during the time period at issue, other than occasional Fiorinal

(sic) for headaches (Exhibit 1F-8).  He was not prescribed a Fentanyl patch or Oxycodone until

2003 (Exhibit 6E)."  AR 14.  Belleau had no insurance from 1997 to 2002 and could not afford

treatment.  AR 291.  In the Ninth Circuit, the inability of a claimant to afford the cost of

treatment is not a valid reason for finding that person not disabled.  See Smolen, 80 F.3d at 1284.

As the Commissioner acknowledges in her Memorandum in Support of Remand, the ALJ erred

in finding Belleau less than credible based on his failure to take pain medication.  Under SSR 96-

7p, an ALJ must not draw any negative inference from a claimant's failure to seek medical

treatment without first considering any explanations the claimant may provide that would

explain infrequent or irregular medical visits or failure to take prescription medication.  Here, the

ALJ erred in discounting Belleau's credibility based on his failure to take pain medication during

Page 12 - FINDINGS AND RECOMMENDATION

the period in question.

Because this court finds that not one of the grounds upon which the ALJ questioned Belleau's credibility is supported by the record, this court recommends that the ALJ's credibility finding be given no weight.  Belleau's testimony as to his symptoms and limitations should be credited as true as a matter of law.  <u>See</u> <u>Lester</u>, 81 F.3d at 834 (ALJ's improper rejection of claimant's testimony must lead to crediting that testimony as a matter of law); <u>see also</u> <u>Varney v. Secretary of HHS</u>, 859 F.2d 1396, 1401 (9th Cir. 1988).  The ALJ found that IBS and thoracic outlet syndrome were severe impairments for the purpose of determining disability.  Accepting Belleau's testimony as true with regard to the limitations caused by IBS and thoracic outlet syndrome, the record shows that he is unable to perform full-time work and should be found disabled.

<u>Medical Opinions of Dr. Koekkoek</u>

Douglas A. Koekkoek, M.D., was Belleau's treating physician.  The ALJ considered and discredited the opinions of Dr. Koekkoek, specifically referring to three letters written by Dr. Koekkoek on October 17, 1996 (AR 228), December 14, 1998 (AR 103), and October 4, 2004 (AR 171).  Belleau contends that the ALJ improperly rejected Dr. Koekkoek's opinions, and the Commissioner concedes in her brief that the ALJ erred in not completely evaluating the opinions of this treating physician.

In the Ninth Circuit, "where [a] treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  <u>Lester</u>, 81 F.3d at 830, quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991).  "Clear and convincing reasons" are also required to reject the treating doctor's ultimate conclusions.  <u>Id.</u>, citing <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988).  If a treating physician's medical opinion is supported

by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Holohan, 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, the court credits that opinion as a matter of law. Lester, 81 F.3d at 834.

After considering Dr. Koekkoek's opinions, the ALJ wrote:

Dr. Koekkoek opines that the claimant would be unable to maintain employment as he would miss work between 30% and 50% of the time due to his symptoms. (Exhibit 4F-171, 172, 115). This opinion is given little weight. The opinion of Dr. Koekkoek is not consistent with the claimant's active lifestyle and minimal treatment during the time period at issue. Furthermore, his opinion is inconsistent with a December 1998 letter in which he minimizes the claimant's symptoms. In this letter Dr. Koekkoek stated that the claimant had minimal symptoms that had required medical attention for headaches and cervical disc problems. He had occasional trouble with some achiness in the arms and shoulders related to thoracic outlet syndrome but had no neurologic compromise. He no longer required Fiorinal (sic) with codeine and had not required a prescription in over 9 months. The claimant had reported some abdominal trouble and reflux symptoms in July 1998 but was having no musculoskeletal or neurologic complaints and was in average health in general respects (Exhibit 2F-45).

AR 14-15.

The ALJ's first statement discrediting Dr. Koekkoek's opinion renews the incorrect assessment of Belleau as having an "active lifestyle" and undergoing "minimal treatment" during the time period in question. For the reasons set forth above, neither of these assertions is supported by the record. As for Dr. Koekkoek's December 1998 letter, that letter only addressed Belleau's symptoms of muscular headaches and cervical disc disease, and did not address the impairments of IBS or thoracic outlet syndrome. The Commissioner concedes this point in her Memorandum in Support of Remand. Therefore, the December 1998 letter can not be sufficient evidence to discredit Dr. Koekkoek's other medical opinions that found: "[Belleau] would have significant difficulty maintaining a regular working schedule and would have significant work

deficits and miss quite a bit of work" due to significant medical problems, including IBS with rapid GI transit, frequent abdominal cramping and diarrhea, thoracic outlet syndrome, and chronic pain.  AR 228 (October 16, 1996).  In August 2004, Dr. Koekkoek opined that due to his combined impairments:  "[Belleu]  would be missing work I would estimate somewhere between 30% and 50% of the days."   In that same letter he concluded, "I continue to think that Mr. Belleau should be considered disabled because of his multiple medical problems."  AR 172.  The ALJ did not provide the required "clear and convincing" reasons for rejecting a treating physician's opinions and conclusions.  Because the ALJ rejected Dr. Koekkoek's opinions by incorrect legal standards, those opinions are credited as true as a matter of law.  Lester, 81 F.3d 834.

Evidence should be credited and an immediate award of benefits directed when (1) the ALJ failed to provide legally sufficient reasons for rejecting the opinion of a treating or examining physician; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Smolen, 80 F.3d at 1292.  Here, if Dr. Koekkoek's opinions are credited, the VE's testimony establishes that Belleau could not perform his past relevant work or any other competitive employment.  AR 294-96.  As in Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004), where it is "clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate."  The record shows that Belleau cannot sustain work activity and a finding of disability is appropriate.

///

Page 15 - FINDINGS AND RECOMMENDATION

Remand

This court recommends that the ALJ's decision be reversed and remanded for the calculation and award of benefits. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989) (citation omitted). Here, the ALJ found that Belleau had two severe impairments, but found him not disabled based on an improper formulation of Belleau's RFC, questions regarding Belleau's credibility, and discrediting Belleau's treating physician. Because this court finds that the ALJ improperly questioned Belleau's credibility, and improperly discredited the uncontroverted opinions of Belleau's treating physician, this court finds no use for further development of the record. A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. Holohan, 246 F.3d at 1210.

///

///

///

///

///

///

///

Page 16 - FINDINGS AND RECOMMENDATION

CONCLUSION

For the foregoing reasons, this court recommends denying the Commissioner's motion to remand to the agency for further administrative proceedings (#25), and reversing and remanding the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due November 22, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 8th day of November, 2006.


    /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge